**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NELLY FERNANDA LOJANO VILLA, as next friend of
HECTOR FERNANDO LOJANO VILLA

                           Petitioner,

v.

WARDEN, BROOME COUNTY CORRECTIONAL
FACILIY; DIRECTOR, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; and SECRETARY,
DEPARTMENT OF HOMELAND SECURITY,

                           Respondents.

9:26-cv-00397 (BKS)

---

**Appearances:**

*As Next Friend of Petitioner:*
Nelly Fernanda Lojano Villa
Flushing, NY 11368

*Petitioner:*
Hector Fernando Lojano Villa
221-141-580
Broome County Correctional Facility
P.O. Box 2047
Binghamton, NY 13902

*For Respondents:*
Emer M. Stack
Assistant United States Attorney
United States Attorney's Office
100 South Clinton Street
Syracuse, New York 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

Nelly Fernanda Lojano Villa filed this petition pursuant to 28 U.S.C. § 2241 as next friend of her son, Petitioner Hector Fernando Lojano Villa, a noncitizen who has been present in the United States since August 2024. (Dkt. No. 1, at 3; Dkt. No. 6-1, ¶ 4). On September 15, 2025, Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") in Liverpool, New York, and is being held at Broome County Correctional Facility. (Dkt. No. 1, at 3). Petitioner asserts he has been subject to prolonged detention without a meaningful opportunity to be heard and seeks immediate release, or, in the alternative, a bond hearing. (*Id.* at 2). Upon review of the petition, the Court issued an Order: directing Respondents to show cause why the Petition for a writ of habeas corpus should not be granted; setting a briefing schedule; scheduling oral argument; and prohibiting Respondent from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending. (Dkt. No. 2). The Government filed a response, (Dkt. No. 6), and Petitioner filed a reply, (Dkt. No. 9). On March 31, 2026, the Court held oral argument at which the Government, Petitioner, and Ms. Villa appeared. For the reasons that follow, the petition is denied as premature.

**II.      BACKGROUND[1]**

Petitioner is a native and citizen of Ecuador. (Dkt. No. 1, at 1). On August 9, 2024, Petitioner "entered the United States without inspection outside a port of entry at or near Santa Teresa, New Mexico." (Dkt. No. 6-1, ¶ 4). Shortly thereafter, a United States Border Patrol Agent encountered Petitioner "in the El Paso, TX Border Patrol Sector," determined that

---

[1] Unless otherwise noted, the facts are not disputed.

Petitioner had unlawfully entered the United States and took him into custody. (Dkt. No. 6-2, at 2). Petitioner was transported to the Central Processing Center in El Paso, (*id.*), "for expedited removal," (Dkt. No. 6-1, ¶ 4). Because Petitioner "claimed a fear of return to Ecuador," he "was referred to an asylum officer," who determined Petitioner "demonstrated a credible fear of persecution or torture." (*Id.* ¶¶ 5–6). "As a result, on August 27, 2024, Petitioner was served with a Notice to Appear in immigration court," and on September 4, 2024, Petitioner was "released on interim parole for a period of one year."[2] (*Id.* ¶¶ 5–6; *see also* Dkt. No. 6-2, at 8 ("Your parole authorization is valid for one year beginning from the date on this notice and will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion.")). Petitioner's parole expired on or about September 4, 2025. (Dkt. No. 6-1, ¶¶ 5–6).

On September 15, 2025, as part of a "targeted enforcement operation,"[3] ICE conducted a vehicle stop in Liverpool, New York. (Dkt. No. 6-1, ¶ 7; Dkt. No. 6-2, at 13). Petitioner, who was a passenger in the vehicle, was arrested and served with a Form I-200, Warrant for Arrest of Alien." (Dkt. No. 6-1, ¶ 7; Dkt. No. 6-2, at 11 (warrant finding "probable cause to believe that [Petitioner] is removable from the United States" "based upon" "the pendency of ongoing removal proceedings")).

On October 17, 2025, Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal with the immigration court. (Dkt. No. 6-1, ¶ 9).

On October 22, 2025, the immigration court denied Petitioner's request for a custody redetermination, stating that the court did not "have the legal authority to grant bond to

---

[2] The "Interim Notice Authorizing Parole" is dated September 3, 2024. (Dkt. No. 6-2, at 8).

[3] Jamie Lojano-Villa was the target of the operation. (Dkt. No. 6-2, at 13).

Respondent[] present without being admitted or paroled pursuant to *Matter of Hurtado*, 23 I&N Dec. 2016 (BIA 2025)." (Dkt. No. 6-2, at 15).

On November 21, 2025, Petitioner filed Form I-360 for Amerasian, Widower, or Special Immigrant with United States Citizenship and Immigration Services ("USCIS"). (Dkt. No. 6-1, ¶ 10). Ms. Lojano Villa states in a letter that Petitioner "is currently in immigration proceedings under Special Immigrant Juvenile Status (SIJS), which has already been approved by a family court." (Dkt. No. 9, at 1). There is no further information regarding SIJS.

On December 17, 2025, the Department of Homeland Security ("DHS") filed a motion to pretermit Petitioner's Form I-589 Application for Asylum "arguing that [Petitioner] is barred from applying for such relief because he may be removed to Honduras . . . pursuant to an Asylum Cooperation Agreement between the United States and Honduras." (Dkt. No. 6-1, ¶ 11). On January 9, 2026, after hearing arguments from the parties, the immigration court denied DHS's motion. (Dkt. No. 6-2, at 19–20).

On January 6, 2026, the immigration court denied Petitioner's request for a change in custody status, again citing *Matter of Hurtado*. (*Id.* at 17).

On January 22, 2026, the immigration court issued an order finding Petitioner removable, denying asylum, and granting withholding of removal to Ecuador under 8 U.S.C. § 1231(b)(3)(A). (Dkt. No. 6-2, at 21, 23; Dkt. No. 6-1, ¶11).

On March 2, 2026, the immigration court denied Petitioner's request for a change in custody status "because [the] Court has no jurisdiction to hear bond in this case. [Petitioner] was granted withholding of removal relief by the Court previously." (Dkt. No. 6-2, at 25).

## III.    NEXT FRIEND STATUS

An "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242

(emphasis added). "A person acting on behalf of the person for whom the habeas petition is filed is known as a 'next friend.'" *Iza by Iza v. Larocco*, No. 25-cv-6915, --- F. Supp. 3d ----, 2026 WL 31378, at *8, 2026 U.S. Dist. LEXIS 1009, at *21 (E.D.N.Y. Jan. 5, 2026) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 161 (1990)). The Second Circuit instructed that:

> [T]here are "at least two firmly rooted prerequisites for 'next friend' standing." "First, a 'next friend' must provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action." "Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate."

*Doe v. Hochul*, 139 F.4th 165, 177 (2d Cir. 2025) (internal citations omitted) (quoting *Whitmore*, 495 U.S. at 163). Several "courts in the Southern and Eastern Districts of New York have decided habeas petitions in recent months brought by a next friend with a significant relationship to a detainee." *Ndoye v. Joyce*, No. 25-cv-8856, 2026 WL 306387, at *1 n.2, 2026 U.S. Dist. LEXIS 24653, at *2 n.2 (S.D.N.Y. Feb. 5, 2026) (collecting cases); *see also id.* (allowing the petitioner's wife to act as next friend, finding "in part based upon the manner of his arrest and detention, Petitioner has been unable to prosecute the action on his own behalf," noting the petitioner's failure "to file the amended petition in full on the docket," and finding that the petitioner's wife had shown her dedication to the petitioner's "best interests, based on her significant relationship to Petitioner and her conduct to date").

In support of her request to appear as next friend to Petitioner, Ms. Lojano Villa filed a declaration stating that she is Petitioner's biological mother and that she is "deeply concerned about the emotional and psychological impact that the prolonged detention is having on him." (Dkt. No. 1, at 3). At oral argument, Ms. Lojano Villa stated that Petitioner did not have access to an interpreter, law library, or resources through which he could communicate with Court. The

5

court therefore concludes the petitioner's difficulties under the present circumstances and lack of access to resources sufficiently demonstrate inaccessibility. *See Iza by Iza*, 2026 WL 31378, at *8, 2026 U.S. Dist. LEXIS 1009, at *22–23 (finding next friend sufficiently demonstrated the courts were inaccessible to the petitioner where the petitioner, who had been detained by ICE, had no opportunity to call counsel and was given no information on available relief, had no access to a law library or means to prepare a pro se petition, had strict limitations on call time, and had been "transferred from facility to facility"). Moreover, during oral argument, it was evident to the Court that Ms. Lojano Villa, who filed the petition, appeared and participated at oral argument, and filed a reply on Petitioner's behalf, is truly dedicated to her son and is seeking his best interests. Respondents take no position on this application. Accordingly, Ms. Lojano Villa's request is granted.

## IV.    JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6, 2018 U.S. Dist. LEXIS 98712, at *15 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## V.    DISCUSSION

Petitioner asserts that because he has been granted "Withholding of Removal, recognizing that Petitioner cannot safely be returned to Ecuador," but remains in "prolonged detention" without "a meaningful opportunity for release," his due process rights have been violated. (Dkt. No. 1, at 1–2). The Government responds that because Petitioner has been

ordered removed and the removal order was administratively final as of January 22, 2026, Petitioner's detention is mandatory for the ninety-day period following January 22, 2026. (Dkt. No. 6, at 9 (citing 8 U.S.C. § 1231(a)(1)(B)(i), (a)(2)).

Section 1231 governs the detention of noncitizens following an order of removal and states that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the 90-day removal period. *Id.* § 1231(a)(2)(A) ("During the removal period, the Attorney General *shall detain* the alien.") (emphasis added); *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) ("After entry of a final removal order and during the 90-day removal period . . . aliens must be held in custody."). "There are three scenarios that can trigger the start of [Section 1231's] removal period, but only the *latest* of those scenarios is the trigger." *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018). Those scenarios are:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)).

The Government asserts that the first scenario, the date the removal order became administratively final, triggered the 90-day removal period in this case. The Court agrees.

Petitioner does not claim to have sought judicial review of the removal order or obtained a stay[4] and Petitioner is detained under an immigration process, thus neither the second nor the third scenario are applicable. To determine the date the order of administrative removal became administratively final, the Court finds guidance in the applicable regulations, which state, as relevant here: that "[a]n order of removal made by the immigration judge at the conclusion of proceedings . . . shall become final . . . (b) [u]pon waiver of appeal by the respondent." 8 C.F.R. § 1241.1(b). Here, Petitioner (the respondent in the immigration court proceedings) waived appeal of the removal order on January 22, 2026. (Dkt. No. 6-2, at 24). The order of removal therefore became "administratively final" on January 22, 2026 and Section 1231's 90-day removal period—during which detention is mandatory—began on January 22, 2026, and extends until April 22, 2026. *See J.L. v. Decker*, No. 22-cv-2853, 2024 WL 232115, at *5, 2024 U.S. Dist. LEXIS 10894, at *11 (S.D.N.Y. Jan. 22, 2024) ("The removal period thus began—and the statutory provision governing detention shifted to Section 1231—when the order of removal became administratively final on April 20, 2022."); *see also Jumadar v. Castro*, No. 26-cv-00159, 2026 WL 392424, at *1, 2026 U.S. Dist. LEXIS 29451, at *1  (D.N.M. Feb. 11, 2026) (finding the petitioner's waiver of removal order on day of issuance made "removal order administratively final on the same day"); *Tai v. Warden, California City Det. Facility*, No. 26-cv-01857, 2026 WL 747138, at *1, 2026 U.S. Dist. LEXIS 55685, at *1–2 (E.D. Cal. Mar. 17, 2026) ("Petitioner and the Department of Homeland Security . . . waived the right to appeal the removal order and it therefore became final immediately." (citing 8 C.F.R. § 1241.1(b))).

---

[4] It appears the time for seeking judicial review has expired. *See* 8 U.S.C. § 1252(b)(1) ("The petition for [judicial] review must be filed not later than 30 days after the date of the final order of removal.").

Because Petitioner is now detained under Section 1231(a)(2)(A), any claim that Petitioner's initial detention under 8 U.S.C. § 1226 violated due process has been rendered moot. *See Wang*, 320 F.3d at 147 (finding that because the petitioner was "*now* subject to detention" under 8 U.S.C. § 1231, any previously cognizable due process claim under 8 U.S.C. § 1226 has been rendered moot"); *see also Godfrey v. Ball*, No. 23-7104, 2024 WL 4471571, at *1, 2024 U.S. App. LEXIS 25647, at *3 (2d Cir. Oct. 11, 2024) (explaining that "[a] due process challenge to detention under § 1226 is rendered moot" by the occurrence of triggering scenario, which "shifts detention authority to § 1231"); *De Oliveira Jimenez v. Searls*, No. 22-cv-960, 2023 WL 11134381, at *4, 2023 U.S. Dist. LEXIS 237355, at *9 (W.D.N.Y. Mar. 2, 2023) ("The Second Circuit has held that a challenge to an order of detention under Section 1226 is moot once a final order of removal has been entered." (citing *Wang*, 320 F.3d at 147)).

In addition, any due process challenge to Petitioner's current detention under Section 1231 "fails because his petition was either premature or is premature now" since the 90-day removal period has not yet expired. *Godfrey*, 2024 WL 4471571, at *2, 2024 U.S. App. LEXIS 25647, at *3; *see De Oliveira Jimenez*, 2023 WL 11134381, at *5, 2023 U.S. Dist. LEXIS 237355, at *10 (dismissing the petition under "Section 1226 as moot and under Section 1231 as premature"); *Contreras Blanco v. Garland*, No. 21-cv-172, 2021 WL 3667201, at *2, 2021 U.S. Dist. LEXIS 155326, at *5 (W.D.N.Y. Aug. 18, 2021) (dismissing petition as premature where petitioner had been detained under Section 1231 for less than two months). The Supreme Court has held that detention of a noncitizen *for up to six months* during the removal period under § 1231 is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut

that showing." *Id.* Thus, Petitioner's detention will remain presumptively reasonable until at least July 22, 2026. For that reason, the petition is premature and is denied subject to renewal after July 22, 2026.

## VI.    CONCLUSION

Accordingly, it is

**ORDERED** that the request to proceed by Next Friend is **GRANTED**; and it is further

**ORDERED** that the Petition (Dkt. No. 1) is **DENIED without prejudice as premature**; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case; and it is further

**ORDERED** that the Clerk serve this Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>April 6, 2026</u>

Brenda K. Sannes
Chief U.S. District Judge